**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KARLA CAMPOS and MOOTASSEM EL-HAJJ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-04-3892 |
| YELLOW, INC., | § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Plaintiffs Karla Campos and Mootassem El-Hajj filed this collective action under 29 U.S.C. § 216(b) against their employer, Yellow, Inc. This company owns and operates approximately 27 gas stations in Houston, Texas. Campos and El-Hajj sued on behalf of themselves and similarly-situated sales associates and managers who worked at Yellow during October 2001 to the present, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Plaintiffs assert that Yellow denied them and other employees who are — or should be — classified as nonexempt overtime pay required by 29 U.S.C. § 207(a). Plaintiffs ask this court to authorize notice and expedited discovery. (Docket Entry No. 2). Yellow has responded, primarily challenging the request to include both store managers such as El-Hajj (who are paid salaries and are considered exempt by Yellow) and sales associates such as Campos (who are paid hourly and are not considered exempt). Yellow also asserts that the results of a prior Department of Labor investigation

should preclude this suit. (Docket Entry No. 13).

Based on a careful review of the pleadings; the motion, response, and reply; the present record; and applicable law; this court grants plaintiffs' motion for notice and for related discovery as to two conditionally-certified classes: one of sales associates who were paid hourly and allegedly received straight time for overtime; and one of managers who were paid a weekly "salary" but who allegedly received pay deductions for absences of less than a full day. The reasons for these rulings are set out below.

In addition, this court order the parties to appear for a status conference on **February 24, 2006, at 9:00 a.m.**, in Courtroom 11-B, to set a scheduling order for discovery, notice approval and issuance, and resolution of the disputed issues in the case.

**I.      Background**

Campos worked as a sales associate in a gas station/store that was owned by Shell until 2003. When Yellow acquired this and 26 other Shell locations in the Houston area, Campos continued to work at the same store, with the same job duties. She also worked on occasion at two other stores in the Houston area. (Docket Entry No. 13, Ex. A). Campos asserts that her job duties included working the cash register, preparing items for sale, cleaning the store, assisting customers, stocking the shelves, and taking inventory. (*Id.*). Her description is very similar to the description of a store clerk's duties given by Abraham Doumani, President of Yellow, in his affidavit. (Docket Entry No. 21, Appendix 3). Doumani notes that store clerks have the following duties: "[h]andles the cash register, stocks inventory, and maintains a clean store/property." (*Id.* at 2).

Campos asserts in her declaration that in contrast to her experience as a Shell employee, when she was paid one and one-half times her hourly rate for hours she worked that exceeded forty hours in a week, Yellow paid her a flat hourly rate for all hours that she worked. Campos received $7.40 per hour. She alleges that Yellow routinely required her to work in excess of forty hours a week, but never paid her overtime. Campos further alleges that at one point Yellow changed her pay to $400 per week regardless of the number of hours worked, yet still required her to work in excess of forty hours per week. Campos further alleges that during the period she was paid a salary of $400 per week, Yellow altered her pay stubs to make it appear that she was receiving overtime pay for hours that she worked in excess of forty hours per week. In his affidavit, Doumani states that Campos was promoted to manager on a temporary basis and paid a manager's salary of $400 per week, then demoted back to clerk and again received an hourly wage. (Docket Entry No. 22, Appendix 3).

Campos asserts that during her employment, she and other employees with similar job duties talked about how they were working more than forty hours per week but were paid straight time for overtime. Campos filed a consent to join the action and asserts that other workers who experienced similar treatment are interested in recovering the overtime wages they did not receive.

El-Hajj initially worked as a sales associate for Yellow at same store location Campos began working in. He was a sales associate from September 2003 to approximately December 2003, a two-month period. El-Hajj asserts that during that period, he was paid

$8.00 per hour and did not receive overtime despite the fact that he worked in excess of forty hours per week.

After he became a store manager, El-Hajj asserts that he had the same job as an associate and also had to schedule employees, keep track of employees' hours, report those hours to the main office, take inventory and order groceries, make bank deposits, and make the daily business report. He asserts that it was "not unusual" for him to work in the store alone.

Yellow's president Doumani described a manager's duties as follows:

> A manager. . . [s]chedules employees, orders inventory, counts money, performs or oversees paperwork, hires and fires, handles customer service and complaints, responsible for overall station maintenance, performs and conducts all aspects of running the service station, management of the enterprise, directs the work of other employees, and exercises discretionary powers and implement changes and policies, responsible for the store clerks.

(Docket Entry No. 21, Ex. L. at 1–2). At Yellow, a manager is considered exempt and paid a salary of at least $500 per week. A supervisor is a manager who oversees more than one store, and is also considered exempt. An assistant manager performs some of a manager's duties, but does not hire and fire, is not responsible for employee schedules, does not handle money, does not oversee paperwork, and does not implement changes. An assistant manager is considered nonexempt. *Id.*

As a manager, El-Hajj began by receiving a salary of $500 per week. After two pay periods, beginning in December 2003, he received a raise to $525 per week. From April 2004 until he stopped working at Yellow in July 2004, El-Hajj received $575 per week. El-

4

Hajj alleges that Yellow routinely required him to work in excess of forty hours per week without paying him overtime. He asserts that he should have received overtime pay for hours worked in excess of forty hours per week. In support of his claim that he was improperly classified as exempt, he asserts that a deduction was made from his paycheck for time that he missed from work to go to a doctor's appointment. El-Hajj asserts that he knows of another manager at a different store who was paid on a similar basis.

Both Campos and El Hajj have moved for notice under the Fair Labor Standards Act to all "current and former employees . . . who were paid at straight time rates for hours worked in excess of forty in a workweek" and/or store managers "who had deductions from their weekly salary when they missed time from work," from October 6, 2001 to the present. Plaintiffs also request discovery for the names and addresses of the proposed class members. Yellow opposes this motion on the ground that the Department of Labor investigated and found only one problem with both Campos and El-Hajj, which Yellow has cured, and because the proposed notice includes exempt employees who are not eligible for overtime.

## II.     The Applicable Legal Standards

Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. 29 U.S.C. § 207(a). Section 216(b) creates a cause of action for employees against employers violating the overtime compensation requirements. 29 U.S.C. § 216(b). Section 216(b) provides:

> An action . . . may be maintained . . . by any one or more employees for and

> in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* Section 216(b) establishes an "opt-in" scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). District courts have discretion in deciding whether to order notice to potential plaintiffs. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–171 (1989); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 808 (S.D. Tex. 2003).

Courts recognize two methods to determine whether to authorize notice to similarly-situated employees advising them of their right to join an FLSA collective action. *See Mooney*, 54 F.3d at 1213–15. These methods are the two-step *Lusardi* approach and the spurious class action *Shushan* approach. *See id.*; *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). In *Mooney,* the Fifth Circuit found it unnecessary to determine which method is most appropriate. 54 F.3d at 1216. One court has noted, however, that "[i]t is clear that the two-step ad hoc approach is the preferred method for making the similarly situated analysis and the similarly situated standard does not incorporate Rule 23 requirements." *Basco v. Wal-Mart Stores Inc.*, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) (noting that "the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23"); *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir.

1975) (finding a fundamental difference between Rule 23 class actions and FLSA collective actions); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004) (stating that the majority of courts have employed or implicitly approved the two-step method); *Villatoro*, 286 F. Supp. 2d at 810.

"*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Mooney*, 54 F.3d at 1213. The first step of analysis is the "notice stage" in which the district court decides whether to issue notice to potential class members. *See id.* at 1213–1214. The court's decision is usually based only on the pleadings and any affidavits that have been submitted. *Id.* "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" where potential class members receive notice and the opportunity to opt-in. *Id.* at 1214 n.8. The lenient standard appears to require only substantial allegations that potential members "were together the victims of a single decision, policy, or plan . . . ." *Id.* (citing *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). A factual basis for the allegations is needed to satisfy this first step. *See Hall v. Burk*, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) (stating that "[u]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden"); *see also Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983). Some courts place an emphasis on finding "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County Sch. Sys.*,

7

242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) (citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D. Or. 2002)); *see Basco*, 2004 WL 1497709, at *5 (quoting *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (stating that certification is appropriate where some factual nexus binds named plaintiffs and potential class members as victims of a particular alleged policy or practice)). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see Barron*, 242 F. Supp. 2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences."). If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney*, 54 F.3d at 1214.

The second stage of inquiry typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally-certified class. *See id.*; *Lusardi*, 118 F.R.D. at 359. At that point, the court makes a factual determination as to whether there are similarly-situated employees. *Id.* If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney*, 54 F.3d at 1214; *Basco*, 2004 WL 1497709, at *3. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *See id.*; *England*, 370 F. Supp. 2d at 508.

Section 13(a)(1) of FLSA exempts employees occupying "bona fide executive,

8

administrative, or professional" positions from the overtime requirements of section 7. 29 U.S.C. § 213(a)(1). To be exempt, an employee must primarily have managerial or supervisory duties. 29 C.F.R. § 541.103-541.117. The employee must earn wages of at least $250 per week and must be paid on a "salary" basis. 29 C.F.R. § 541.117-541.118. Under the regulations, an employee is a salaried and not an hourly employee if that person "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. . . ." 29 C.F.R. § 541.118(a). If employees are covered by a policy that allows deductions in pay for time missed short of a full day, disciplinary reasons, or other deductions in pay as a practical matter, those persons cannot be considered an exempt employee. *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Cowart v. Ingalls Shipbuilding, Inc*., 213 F.3d 261, 264 (5th Cir. 2001). This standard is met "if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Cowart*, 213 F.3d at 264 (quoting *Auer*, 452 U.S. at 461). An employer may, however, make deductions from a salaried employee's wages for absences of a full day or more for personal reasons or sickness. 29 C.F.R. § 541.118(a)(2).

## III.    Analysis

Plaintiffs have alleged two different categories of similarly-situated employees. The first is sales associates who were classified as nonexempt, paid on an hourly basis, and were paid at straight-time rates for hours worked in excess of forty hours in a work week. The

second is store managers who were classified as exempt and paid a "salary," but had deductions from their weekly salary for absences of less than one day. The two categories are not similarly situated to each other. The issue is whether two separate classes should be conditionally certified and two separate notices issued.

As to the first category, Campos has alleged that she and other sales associates, paid hourly, are similarly situated in terms of job duties. She has also alleged that Yellow has a policy of requiring sales associates to work more than forty hours in a workweek without paying overtime. Campos cites information obtained from other sales associates in support of her allegation. Yellow moves to strike that portion of her declaration as hearsay. Even without that portion, however, El-Hajj stated in his declaration that he supervised sales associates other than Campos, kept track of their time to report it to the main office, and saw the checks that they received. El-Hajj asserts that based on his own observations and knowledge, sales associates did not receive overtime for working more than forty hours in a workweek. The record provides more than the required modest showing for conditional certification of a class of sales associates, as to which Campos is the class representative, who were not in management positions and were paid straight time for overtime hours. *Accord Clarke v. Convergys Customer Mgmt. Group, Inc.*, 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005) (conditionally certifying class of employees all of whom were "alleged to have been subjected to the same unlawful practices . . . and to have performed the same type of pre- and post-shift, off-the-clock tasks"); *Realite v. Ark Restaurants Corp.*, 7 F. Supp.2d 303, 307 (S.D.N.Y. 1998) (authorizing notice to potential plaintiffs based on submission of

"affidavits uniformly indicating that hourly-paid employees at the 15 Ark Restaurants were paid fixed rates regardless of the number of hours actually worked, that they were not paid overtime compensation even though they regularly worked more than 40 hours per week, [and] that they were not paid overtime compensation even though they regularly worked more than 40 hours per week").

As to the proposed conditional certification of a class of managers, El-Hajj asserts that Yellow has a policy of deducting pay for absences of less than a full day, which is inconsistent with the salary test for exempt employees. In response, Yellow asserts that the determination of whether managers were exempt or not requires individualized determination. That is often correct. *See, e.g., Mike Safeco Ins. Co.*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (denying motion to certify class of insurance claims representatives because the plaintiff sought to challenge his exempt status based on his actual, daily job tasks). In the present case, however, El-Hajj has not asserted that managers are properly treated as nonexempt because they spend most of their time on nondiscretionary and nonadministrative tasks. Rather, El-Hajj has asserted that Yellow does not pay managers a "salary" because Yellow deducts for absences of less than a full day. This allegation does not require the type of individualized analysis required to decide whether each claimant spent a substantial part of their time exercising discretion. *Cf. Reich v. Homier Distributing Co., Inc.*, 362 F. Supp. 2d 1009, 1013–14 (N.D. Ind. 2005) (refusing to certify class because determining whether the employer improperly treated the plaintiff as nonexempt would "require a highly individualized, fact-intensive inquiry"); *Holt v. Rite Aid Corp.*, 333 F.

11

Supp. 2d 1265, 1274–75 (M.D. Ala. 2004) (same).

Yellow's primary objection to the notice for one or more conditionally-certified class of sales associates and managers is its assertion that the Department of Labor conducted an investigation from 2002 to 2002 and determined that Yellow had committed violations only as to Campos. Yellow asserts that it paid the Department of Labor the amount found owing for Campos, and paid an additional amount to settle the claim asserted as to El-Hajj.

The statute does not state that the right of a private plaintiff to bring an FLSA action terminates if the Department of Labor investigates. To the contrary, the Act states that the right of an employee to bring an action "shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title. . . ." 29 U.S.C. § 216(b). The record does not reveal any such suit filed by the Secretary. The statute authorizes the DOL to supervise payment of unpaid overtime compensation owed to employees. 29 U.S.C. § 216(c). An employee's agreement to accept the payment of back wages supervised by the DOL and payment in full waives the employee's right to bring a suit for unpaid wages and liquidated damages under § 216(b). *See* 29 U.S.C. § 216(c); *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539 (5th Cir. 1977). A valid waiver under section 216(c) requires that the employee agree to accept the payment the DOL determines to be due and that there be "payment in full." *Sneed*, 545 F.2d at 539; *see Solis v. Hotels.com Texas, Inc.*, No. Civ.A. 303CV0618L, 2004 WL 1923754, *2 (N.D. Tex. Aug. 26, 2004) ("Once an employee agrees to accept a payment of back wages supervised by the DOL and receives payment in full of those wages, the employee waives any right to bring a suit against his employer to recover

unpaid wages under § 216(b)." (citations omitted)).  Yellow has submitted evidence that it paid DOL an amount the DOL determined to be due Campos and El-Hajj and asserts that DOL cashed the check.  There is no evidence, however, of an agreement by Campos or El-Hajj to accept payment as determined by the DOL or that they received payment in full.

Based on the current record, and without evidence that Campos and El-Hajj accepted the payment from the DOL or that they received full payment of the amount determined to be due, this court grants the motion for notice to two separately and conditionally certified classes.  The first class is of sales associates employed from October 6, 2001 to the present who were paid hourly and who were allegedly paid straight time for overtime.  The second class is of managers employed during the same period who were paid "salary" on a weekly basis but whose checks had deductions for absences of less than a full day.  This court also grants the motion for discovery of the names, addresses, and telephone numbers of the potential class members.

**IV.   Order**

The parties are to appear for a status conference on **February 24, 2003, at 9:00 a.m.**, in Courtroom 11-B, to set a scheduling order for discovery, notice approval and issuance, and resolution of the disputed issues in the case.

SIGNED on February 13, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge